UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID ROGERS, JAMES VAN DANIKER, and IVAN DERRICK<br>　　　Plaintiffs,<br><br>　　v.<br><br>OCEAN CABLE GROUP INC., ROBERT MILLS, and JOHN DOES 1-5 and 6-10<br>　　　Defendants. | CIVIL NO. 10-4198(NLH)(KMW)<br><br>OPINION |

Appearances:

DEBORAH L. MAINS
KEVIN M. COSTELLO
COSTELLO & MAINS, P.C.
18000 HORIZON WAY, SUITE 800
MOUNT LAUREL, NJ 08054
*Attorneys for plaintiffs*

JAMES PATRICK GRIMLEY
MILLER AND GALLAGHER LAW FIRM
12 S. PENNSYLVANIA AVENUE
ATLANTIC CITY, NJ 08401
*Attorney for defendants*

**HILLMAN, District Judge**

　　Before the Court is plaintffs' motion for conditional class certification pursuant to the Fair Labor Standards Act ("FLSA"). For reasons explained below, plaintiffs' motion for conditional class certification will be denied.

**I.　BACKGROUND**

　　Plaintiffs David Rogers, James Van Daniker and Ivan Derrick ("plaintiffs") are current or former employees of defendant Ocean Gable Group, Inc. ("OCG"). OCG is a company

engaged in the business of installing cable television products and services and is an employer within the meaning of 29 U.S.C. § 203(d).[1]  Plaintiffs were employed as "technicians" or "installers" to perform residential installation, maintenance and upgrading of cable television, internet and telephone service and equipment.  OCG contracts with Comcast to perform the installation and service work for Comcast customers.  Comcast pays OCG a set amount for each type of work performed according to a certain code.  For example, Comcast will pay a certain amount for each installation of a digital cable box which is assigned a particular code.  OCG then pays the employee who installed the digital cable box a fixed amount according to the assigned code.

      Plaintiffs were paid on a biweekly basis and earnings were determined by code, or task rate, based on the individual tasks performed each week.  Plaintiffs were not paid hourly and were not paid a salary.  Plaintiffs state they would arrive at OCG offices in the mornings to receive assignments, retrieve any necessary tools or equipment and stock the Comcast vehicles they

---

[1] "'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization."  29 U.S.C. § 203(d).

would use during the day.  The technicians would then travel to various residential locations and perform service and maintenance work.  Technicians kept a ledger of the customers they serviced and work performed for each day.  Plaintiffs allege that there were no scheduled lunch breaks and that they were required to work through lunch.  After all the field work is completed for the day, the technicians return to the OCG office to turn in their paperwork and ledgers and any unused equipment.

In January 2010, OCG changed its compensation method.  Prior to January 2010, plaintiffs allege that although they worked in excess of a 40 hour workweek, generally averaging 60-70 hours, they were not paid any overtime.  In January 2010 and thereafter, plaintiffs received some overtime pay for hours worked in excess of 40 hours in a workweek, but allege that they were not paid for all the overtime hours that they worked.

In January 2010, OCG also began to require technicians to record the time they arrived at OCG offices in the morning until the time they left the office in the morning to go out into the field.  Plaintiffs allege that they were only permitted to record 30 minutes for morning "prep time" regardless of the time they arrived or the time they left to go out in the field which was often longer than 30 minutes.  At the end of the day, plaintiffs were now required to record their time from when they returned to the OCG office until they left to go home.  As with

the morning "prep time," plaintiffs allege that they were only permitted to record a preset limited amount of time regardless of how long it took them to turn in their paperwork and unused equipment.[2]

Plaintiffs allege that defendants violated the FLSA and seek for themselves and similarly situated employees, declaratory and injunctive relief, unpaid wage, unpaid overtime, liquidated damages, and reasonable attorneys' fees.

## II. **JURISDICTION**

Plaintiffs bring this action on behalf of themselves and others "similarly situated" to remedy alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., and therefore this Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

## III. **DISCUSSION**

### A.   **Standard for Class Certification Under the FLSA**

Plaintiffs allege that defendant violated the FLSA Section 207[3] and seek to sue on behalf of themselves and other

---

[2]   As noted *infra*, two of the plaintiffs differ as to the allotted evening breakdown time.  One plaintiff attests the time was 30 minutes; another asserts the time was one hour.

[3]   Section 207 sets the maximum hours under the FLSA.  See 29 U.S.C. § 207.  An employer shall not employ any employee for a "workweek longer than forty hours unless such employee receives compensation for his employment ... specified at a rate not less

"employees similarly situated" pursuant to Section 216(b) of the FLSA.[4]  See 29 U.S.C. § 216(b), ruled unconstitutional on other grounds in Alden v. Maine 527 U.S. 706, 712 (1999) ("finding unconstitutional provision of FLSA authorizing private actions against states in state courts without their consent).  Rather than opting-out as is done in a traditional class action lawsuit, in an FLSA class action, potential class members must opt-in by providing written consent filed with the Court.  Manning v. Gold Belt Falcon, LLC, --- F.Supp.2d ----, 2011 WL 4583776, at *1 (D.N.J. Oct. 5, 2011) (stating that under the FLSA there are "two pertinent requirements to maintain a collective action: 1) each Plaintiff must manifest his written consent, and 2) Plaintiff's attorney must file that consent with the Court.").

    The term "similarly situated" is not defined in the FLSA.  See Ruehl v. Viacom, Inc., 500 F.3d 375, 389 n.17 (3d Cir. 2007).  Courts that have addressed whether a putative class is similarly situated have adopted or recognized a two-step

---

than one and one-half times the regular rate at which he is employed."  Id.

[4]  Section 216 permits, *inter alia,* a plaintiff and other employees similarly situated to file suit against his or her employer.  See 29 U.S.C. § 216(b).  Plaintiffs allege that there are approximately 50-75 field technicians employed at OCG's New Jersey offices, 35 field technicians employed at OCG's Philadelphia, Pennsylvania office, and an unknown number of field technicians in the other Pennsylvania offices outside of Philadelphia.  Taking into account employee turnover, plaintiffs estimate the potential pool of opt-in plaintiffs to be between 100 and 200 individuals.

approach. See Morisky v. Public Service Elec. and Gas Co., 111 F.Supp.2d 493, 497 (D.N.J. 2000) (citation omitted); Kronick v. Bebe Stores, Inc., No. 07-4514, 2008 WL 4546368 at *1 (D.N.J. 2008) (In "the absence of guidance from the Supreme Court and Third Circuit, district courts have developed a test consisting of two stages of analysis.") (citing Morisky, 111 F.Supp.2d at 496). At the first stage, or notice stage, the Court determines whether notice of the action should be given to potential class members. See Morisky, 111 F.Supp.2d at 497; Kronick, 2008 WL 4546368 at *1 ("During the initial notice phase, courts make a preliminary inquiry into whether the plaintiff's proposed class is one of similarly situated members.") (citations omitted). Although the standard applied at this stage is fairly lenient, courts in the Third Circuit are divided on the amount of evidence needed to establish whether plaintiff is similarly situated to the putative class. See White v. Rick Bus Co., 743 F.Supp.2d 380, 387 (D.N.J. 2010). "Some courts, particularly those in the Western Districts of Pennsylvania, employ the more lenient of the two relaxed standards." Id. "Under that case law, 'preliminary certification is granted upon a mere allegation that the putative class members were injured by a single policy of the defendant employer.'" Id. (citations omitted, emphasis removed). "In contrast, other courts, including those in the District of New Jersey, 'requir[e] the plaintiffs to show a modest factual nexus

6

between their situation and that of the proposed class members.'" Id. (citing Garcia v. Freedom Mortg. Corp., No. 09-2668, 2009 WL 3754070, *2 (D.N.J. Nov. 2, 2009), quoting Aquilino v. Home Depot, Inc., No. 04-4100, 2006 WL 2583563 at *2 (D.N.J. 2006) (emphasis removed); Villanueva-Bazaldua v. TruGreen Lim. Part., 479 F.Supp.2d 411 (D.Del. 2007)).

The "factual nexus" standard will be applied in this case for the initial stage. See Kronick, (adopting the evidentiary standard articulated in Aquilino as requiring a plaintiff to show "a factual nexus between their situation and the situation of other current and former [employees] sufficient to determine that they are 'similarly situated.'") (citing Aquilino, 2006 WL 2583563, at *1). "In spite of the modest [factual nexus] evidentiary standard, courts have not hesitated to deny conditional certification when evidence is lacking." Dreyer v. Altchem Environmental Services, Inc., No. 6-2393, 2007 WL 7186177, at *3 (D.N.J. Sept. 25, 2007).

In the second stage, or "reconsideration stage," the court "makes a second determination after discovery is largely complete and the case is ready for trial." Morisky, 111 F.Supp.2d at 497 (citation omitted); Kronick, 2008 WL 4546368 at *1 ("In the second stage, after more evidence is available, the court makes a final determination as to whether the plaintiff is similarly situated to the rest of the class."). "In its analysis

7

of the 'similarly situated' question at this stage, the court has much more information on which to base its decision and, as a result, now employs a stricter standard." Morisky, 111 F.Supp.2d at 497.  If the court finds the plaintiffs are similarly situated during the second stage, the case may proceed to trial as a collective action.  Id.  The plaintiff bears the burden of proving that class members are similarly situated.  See Troncone v. Velahos, No. 10-2961, 2011 WL 3236219, at *4 (D.N.J. July 28, 2011).

**B.    Plaintiffs' Motion for Conditional Class Certification**

Plaintiffs each submit a separate certification alleging that they were former or current employees of OCG and that they each worked in excess of 40 hours and were not paid overtime (until January 2010), or not paid adequate overtime (after January 2010).  Plaintiffs also state that in January 2010, OCG changed its policy and required technicians to record their time, including time spent at the OCG office preparing for the day and time spent at the OCG office at the end of the day to turn in paperwork and equipment.  Plaintiffs state that regardless of the time spent at OCG offices, they were only permitted to record 30 minutes in the morning and a limited time at the end of the day even though the time they spent at the OCG office was longer.  Plaintiffs also argue that they were required to work through lunch and did not receive lunch breaks.

OCG argues that conditional class certification should be denied because after the technicians receive their work orders in the morning, they are "free to do as they please." OCG states that the technicians are required to keep track of their time and to report to management when they are about to work in excess of 40 hours per week. OCG argues that the amount of work, type of work, location of work, and technician skill varies for each technician. OCG also argues that the affidavits submitted by the plaintiffs are inadequate because they do not name other similarly situated technicians, do not include written policies, and do not include affidavits from anyone other than the plaintiffs.

The facts shared by plaintiffs and the putative class members are that they have the same title of "technician" or "installer" and perform the same job duties of installing and servicing cable television equipment to Comcast cable customers. All the plaintiffs make the same allegation that they were expected to work in excess of 40 hours per workweek but did not receive adequate overtime compensation. Plaintiffs also all allege that they had no lunch break and that they were permitted to record only 30 minutes at OCG's offices each weekday morning and a limited time at the end of the day even though they worked longer.

There are several reasons why class certification, even

in the initial and lenient notice phase, is not appropriate in this case.  The first is the nature of the work and the failure of the named plaintiffs to equate their personal situations with the other putative class members.  Because of the nature of the work performed whereby each technician is fairly autonomous throughout the day, plaintiffs have not provided any evidence that they have personal knowledge or otherwise observed other technicians working in excess of a 40 hour work week.  Although each plaintiff submitted an affidavit stating they worked in excess of 40 hours in a workweek, what they are essentially asking the Court to do is to assume that because they worked in excess of 40 hours in a workweek that the other technicians must have as well.

However, there is no way from the record before the Court to know that the plaintiffs' situation equates, even in a rough way, with other technicians.  On the one hand, it is possible that OCG assigns each technician so many tasks per daily shift that even the most skilled worker could not complete them in eight hours while also accounting for set-up and breakdown time.  Class certification would seem appropriate in such a case. It is equally possible, on this record, that OCG assigns its workers a reasonable daily workload, and that these three plaintiffs take an objectively unreasonable amount of time to complete the assigned tasks.  In such a situation, not only would

class certification be unjustified but any recovery at all would seem grossly unfair to those who completed their task work in a reasonable amount of time.  It is not surprising then that the plaintiffs' affidavits state that the other putative class members did not receive overtime "as far as they know."  Under the standard for conditional class certification, there must be a *factual* nexus, not an assumption of facts.

The second problem with class certification is the lack of a factual nexus between the plaintiffs' situation and a uniform company policy affecting all workers adversely.  Plaintiffs allege that even though they worked in excess of the 30 minutes of prep time in the morning and some similar time at the end of the day at OCG offices, it was OCG's policy that they not bill any excess time.  Plaintiffs, however, do not cite to a specific policy, or supervisor who instituted this policy.  They do not state whether it was a written policy, and if so, do not include a copy of the policy.  Finally, there is no evidence that any other technicians were required to follow this policy, or that the other technicians also worked in excess of the 30 minutes in the morning, and 30 minutes or one hour at the end of the day, and were not compensated for their time.  There is also no evidence that the excess time caused either plaintiffs or the other technicians to work in excess of 40 hours in a workweek.

This deficiency in plaintiffs' allegations is no more

clearly shown that in their own affidavits.  Plaintiff David Rogers states that he was allowed only 30 minutes each evening to turn in his equipment and paperwork.  Certification of David Rogers at ¶ 12.  Yet his co-plaintiff, Ivan Derrick, attests, under oath, that he was allowed up to one hour for the same task.  Certification of Ivan Derrick at ¶ 12.  Why one was given more time than the other is nowhere explained and, as noted above, could be just as easily explained by one worker's skill and efficiency as it could be by some illegal company policy.  Accordingly, the allegations made by plaintiffs do not create the necessary factual nexus between plaintiffs' situation and the situation of the other technicians to warrant class certification at this time.

**IV.  CONCLUSION**

For the foregoing reasons, plaintiffs' motion for conditional class certification will be denied.

　　　　　　　　　　　　　　　　　　s/Noel L. Hillman
　　　　　　　　　　　　　　　　　　NOEL L. HILLMAN, U.S.D.J.

Date: December 29, 2011
At Camden, New Jersey